UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADP, LLC,<br><br>    **Plaintiff,**<br><br>v.<br><br>ULTIMATE SOFTWARE GROUP, INC.,<br><br>    **Defendant.** | Civ. No. 16-8664 (KM) (MAH)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiff, ADP, Inc. ("ADP"), is suing a competitor, defendant Ultimate Software Group, Inc. ("USG"), which has allegedly hired ADP's ex-employees in violation of their non-compete, non-disclosure, and non-solicitation agreements. USG has asserted counterclaims for tortious interference with its prospective business relationships and unfair competition. It alleges, in part, that ADP has sent pre-litigation letters warning these employees that violations of the agreements could result in legal action, creating a "cloud of fear" among prospective employees and clients.

ADP now moves under Fed. R. Civ. P. 12(b)(6) to dismiss USG's counterclaims for failure to state a claim. For the reasons stated herein, ADP's motion is denied.

1

## I. Summary[1]

On November 21, 2016, ADP filed a complaint against USG, alleging that USG engaged in a systematic process of hiring former ADP sales representatives. (Cplt. ¶¶ 1–4.) All of this was done, ADP says, with the goal of obtaining ADP's trade secrets and proprietary information and pirating ADP's current and prospective clients. (*See id.*) ADP's complaint asserts claims under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1839, the Copyright Act, 17 U.S.C. § 106, the New Jersey Trade Secrets Act, N.J.S.A. 56:15-4, -6, and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, as well as other common law claims. (*See id.*)

USG disputes these allegations and has filed counterclaims against ADP. USG's first counterclaim is for tortious interference with prospective economic benefits. (Answer ¶¶ 164–71.) Its second is for unfair competition. (*Id.* ¶¶ 172–80.) USG bases its counterclaims on ADP's alleged intimidation of the employees USG has hired and seeks to hire from ADP. (*See id.* ¶¶ 169, 173.) This intimidation, USG alleges, has taken the form of law suits and letters that threaten law suits ("pre-litigation letters") against those former employees who are now at USG. Such actions, according to USG, have created fear in its its current employees and have reduced the pool of potential employees. (*Id.* ¶¶ 147–49.) As a result, USG has been impaired in its pursuit of lawful and

---

[1] For the purposes of this 12(b)(6) motion to dismiss, I will assume the allegations in the Answer (where the counterclaims are made) are true. *See* Section II, *infra*. Record items will be cited as follows:

| | |
|---|---|
| Cplt. = | Complaint [ECF no. 1] |
| Answer = | Seconded Amended Answer, Affirmative Defenses and Counterclaims to Plaintiff's Complaint [ECF no. 72] |
| Pl. Br. = | Brief in Support of Plaintiff's Motion to Dismiss Amended Counterclaims [ECF no. 77] |
| Def. Opp. = | Defendant's Opposition to Plaintiff's Motion to Dismiss Amended Counterclaims [ECF no. 92] |
| Pl. Reply = | Reply Brief in Support of Plaintiff's Motion to Dismiss Amended Counterclaims [ECF no. 94] |

permitted sales activities. (*Id.*) ADP has moved to dismiss these counterclaims for failure to state a claim. (ECF no. 77.)

## II. Standard of Review

A motion to dismiss counterclaims is reviewed under the same standard as a motion to dismiss a complaint under Fed. R. Civ. P. 12(b)(6). *In re Gabapentin Patent Litig.*, 648 F. Supp. 2d 340, 346 (D.N.J. 2009) (citing *Organon Inc. v. Mylan Pharm.*, 293 F. Supp. 2d 453, 456–57 (D.N.J. 2003)). Under Rule 12(b)(6), a party may move for the dismissal of a claim, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the non-moving party. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

A counterclaimant's obligation to provide the grounds for entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 55 (2007). Thus, the counterclaimant's factual allegations must be sufficient to raise a counterclaimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the [counterclaimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In considering a motion under Rule 12(b)(6), I am confined to the allegations contained within the counterclaims, with some narrow exceptions.

3

Courts may consider "document[s] integral to or explicitly relied upon in the complaint," or any "undisputedly authentic document . . . attache[d] as an exhibit to a motion to dismiss if the [counterclaimant]'s claims are based on the document." *In re Asbestos Products Liab. Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426); *Pension Ben. Guar. Corp.*, 998 F.2d at 1196). I may also take judicial notice of another court's opinion, "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

### III. Discussion

ADP lists four reasons why USG's counterclaims should be dismissed. (Pl. Br. at 2–3.) First, it argues that claims premised on alleged litigation-related conduct and communications are protected by the First Amendment and thus exempt from anti-trust/unfair competition liability under the *Noerr-Pennington*. (*Id.* at 2.) Second, it argues that claims premised on litigation-related communications and conduct are barred by the absolute litigation privilege under New Jersey law. (*Id.*) Third, it argues that the New Jersey Rules of Professional Responsibility do not provide a private cause of action. (*Id.* at 3.) Fourth and finally, it argues that USG has failed to adequately allege that it has been harmed by ADP's conduct or that a causal link exists between ADP's conduct and any possible harm. (*Id.*)

#### a. *Noerr-Pennington* Bar

"Rooted in the First Amendment and fears about the threat of chilling political speech," the *Noerr-Pennington*[2] doctrine provides immunity from antitrust liability for parties who petition the government for redress. *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 264 (3d Cir. 2017) (quoting *A.D. Bedell Wholesale Co. v. Phillip Morris Inc.*, 263 F.3d 239, 250 (3d Cir. 2001)). The doctrine extends to "actions which might otherwise violate the Sherman Act because '[t]he federal antitrust laws do not regulate conduct of private individuals in seeking anticompetitive action from the government." *Id.* More broadly, "[g]overnment advocacy is protected by *Noerr-Pennington* immunity; seeking governmental approval of a private agreement is not." *Id.* The scope of *Noerr-Pennington* immunity depends on the source, context, and nature of the competitive restraint at issue. *Id. Noerr-Pennington* has been extended to provide immunity to private efforts to influence courts and agencies, whether federal or state, *Bristol-Myers Squibb Co. v. IVAX Corp.*, 77 F. Supp. 2d 606, 611 (D.N.J. 2000), and has been held to shield plaintiffs from liability for pursuing state common law claims such as tortious interference with contract and tortious interference with prospective economic gain. *Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 140 (3d Cir. 2005) (declining to decide whether a marketing campaign is petitioning activity that could be immunized by the doctrine).

However, *Noerr-Pennington* is not an absolute shield that covers all litigation and petitioning activity. *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 178 (3d Cir. 2015). The immunity ends where the litigation "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified." *Id.* (quoting *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)). In analyzing litigation to determine if the actions are a sham, the

---

2   The titular cases are *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965).

5

Third Circuit has adopted the approach that governs in the Second, Fourth, and Ninth Circuits when applying *California Motor Transportation Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) and *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993). *Id.* at 180. First, the court must determine whether there has been a single filing or a series of filings. *Id.* If there has been a single filing, there must be "a showing of objective baselessness before looking into the subjective motivations" of the party alleged to have engaged in anti-competitive behavior. *Id.* (noting that *Professional Real Estate*'s "exacting two-step test" puts a heavy thumb on the scale in the favor of the party who has had a claim made against it). On the other hand, when faced with a "series or pattern of lawsuits," a more flexible approach is warranted. *Id.* Even if some of the petitions turn out to have objective merit, the claimant is not automatically immunized from liability. *Id.* The standard set out in *California Motor* governs in those cases; the court should ask "whether a series of petitions were filed with or without regard to merit and for the purpose of using governmental process (as opposed to the outcome of that process) to harm a market rival and restrain trade." *Id.* The court is expected to perform a more holistic review that may include looking at the filing success of the claimant, evidence of bad faith, and the magnitude and nature of the collateral harm caused by the filings as circumstantial evidence of the subjective motivations of the petitioner.[3] *Id.* at 180–81. If more than an insignificant number of filings have objective merit, then it is unlikely that they were filed without regard to success. *Id.* at 181 (citing *USS–POSCO Indus. v.*

---

[3] A court may decide the applicability of the *Noerr-Pennington* doctrine on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if no factual issues are present. *Trustees of Univ. of Pa. v. St. Jude Children's Res. Hosp.*, 940 F. Supp. 2d 233, 242–43 (E.D. Pa. 2013) ("To be sure, the question of whether litigation is a sham can be a fact question for the jury. But as the Supreme Court explained in *PRE*, when 'there is no dispute over the predicate facts of the underlying legal proceeding, a court *may* decide probable cause [and thus *Noerr-Pennington* applicability] as a matter of law." (citations omitted and emphasis added)); *Asphalt Paving Sys. v. Asphalt Maint. Sols., LLC*, No. 12-2370, 2013 WL 1292200, at *7–*8 (E.D. Pa. Mar. 28, 2013) (deciding only that *Noerr-Pennington* immunity applied in its grant of dismissal); *Bristol-Myers Squibb Co. v. IVAX Corp.*, 77 F. Supp. 2d 606, 616 (D.N.J. 2000) (same).

*Contra Costa Cnty. Bldg. & Constr. Trades Council, AFL–CIO*, 31 F.3d 800, 810–11 (9th Cir. 1994)). On the other hand, a high percentage of meritless or objectively baseless proceedings can support a finding that the filings were not brought to redress any actual grievances. *Id.* (citing *City of Columbia v. Omni Outdoor Adver.*, 499 U.S. 365, 380 (1991)).

Here, USG alleges that ADP, despite knowing that the restrictive covenants drafted in its non-compete agreements with its former employees are unenforceable or overbroad, sent a series of letters to former employees who now work at USG warning them of potential law suits for continued violations of the agreements. (Answer ¶¶ 127, 138–39.) It also alleges that ADP deliberately delays filing suit against former ADP employees until near the end of the one-year term of the restrictive covenant to create a continuing "cloud" over the heads of former employees at USG. (*Id.* ¶ 156.)

ADP's first contention is that *California Motor* does not apply because USG is not the named defendant in any of the suits at issue. (Pl. Br. at 14.) However, courts have found that sham litigation need not name the targeted competitor as a part; the focus is not on the parties but on whether the actions were "brought for the purpose of injuring a market rival." *See, e.g., Inserra Supermarkets, Inc. v. Stop & Shop Supermarket Co., LLC*, No. 16-1697, 2017 WL 3189029, at *3 n.8 (D.N.J. July 27, 2017) (noting that the court had previously disagreed with defendant's argument that its OPRA litigation did not belong to a series of sham litigation because plaintiff was not a party to the OPRA suit); *Total Renal Care, Inc. v W. Nephrology & Metabolic Bone Disease, P.C.*, No. 08-513, 2009 WL 2596493, at *12 (D. Col. Aug. 21, 2009) (finding the sham litigation exception applied despite only one of the "sham" law suits involved the named party). Similarly, I am persuaded that the alleged actions instituted against former ADP employees working at USG and potential employees for USG sufficiently involves USG and such action is adequately alleged to have been brought for the purpose of injuring a market rival.

ADP's second contention is that the standard for "sham litigation" has not been met by USG's allegations, because the lawsuits actually litigated against USG employees were not "objectively baseless" or brought "without regard to the merits." (Pl. Br. at 13.) Describing a series of cases where the non-compete agreements were litigated, ADP touts a won-lost[4] record of 12-1. (*Id.* at 18–21.) USG disputes the reading of these cases as victories for ADP, while also pointing out that there is still a factual controversy as to whether the first prong of *Professional Real Estate* ( "objectively baseless") has been met. (Def. Opp. at 20, 25.) At the motion-to-dismiss stage and without the benefit of discovery definitively setting out the universe of cases between ADP, USG, and its employees, it is too early to decide whether the series of litigations pursued by ADP against USG and its employees constitute "sham litigation." So far, USG has sufficiently pled claims for tortious interference and unfair competition by ADP that fall outside the immunity granted by the *Noerr-Pennington* doctrine, as it has alleged both that ADP had the subjective intent and that the litigation, as a series of actions, was a sham.

### b. Litigation Privilege

Under New Jersey law, "the litigation privilege shields persons from liability arising from any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve objects of the litigation; and (4) that have some connection or logical relation to the action." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 319 (3d Cir. 2014) (quoting *Loigman v. Twp. Comm. of Middletown*, 185 N.J. 566, 585 (2006)); *see also Baglini v. Lauletta*, 338 N.J. Super. 282, 298 (App. Div. 2001) ("The privilege is not limited to statements made at trial; it extends to all statements or communications in connection with the judicial proceeding." (citation and quotation marks omitted)); *Rickenbach v. Wells Fargo Bank, N.A.*,

---

[4] A win seems to mean, according to ADP's briefing, a finding by the court that ADP's restrictive covenant with its former employee was, at least in part, valid and enforceable.

635 F. Supp. 2d 389, 401, 402 (D.N.J. 2009) (noting that the privilege is "expansive" and has been applied to pre-litigation "demand letters"). The purpose of the doctrine is to allow parties "unfettered expression critical to advancing the underlying government interest at stake." *Rickenbach*, 635 F. Supp. 2d at 401 (quoting *Peterson v. Ballard*, 292 N.J. Super. 575, 581 (App. Div. 1996)). However, like the *Noerr-Pennington* doctrine, the litigation privilege is not absolute. *Dello Russo v. Nagel*, 358 N.J. Super. 254, 266 (App. Div. 2003) (noting that the privilege does not provide a shield from professional discipline for an attorney's unethical conduct or for malicious prosecution); *Rickenbach*, 635 F. Supp. 2d at 402 (noting that malicious prosecution claims are an exception from the litigation privilege shield).

The litigation privilege also does not cover communications in furtherance of a litigation that is pretextual. *NVR, Inc. v. Davern*, No. 15-5059, 2015 WL 7013459, at *4 (D.N.J. Nov. 30, 2016). In *Davern*, the employing company alleged in its counterclaims that the litigation was meant to damage its position in the market and to get the company to fire the plaintiff's ex-employee. *Id.* The plaintiff's motion to dismiss the counterclaims was denied.[5]

USG's counterclaims here are based on similar allegations of pretext. USG contends that the strategy behind ADP's litigation is simply to hurt USG's position in the market and create a "cloud of fear" over its current and future employees, as opposed to the vindication of its legitimate rights under the

---

[5] The Court holds that the litigation privilege does not apply to bar Davern's counterclaims because all three counterclaims are premised on the theory that this entire litigation is pretextual. According to Davern, all of NVR's actions were not designed to achieve the object of the litigation—i.e., the retrieval of confidential information and money damages—but rather, to get Davern fired from Horton, sabotage Davern's relationship with Horton's competitive position in the market. In light of such allegations, the litigation privilege cannot shield NVR from liability for filing and pursuing alleged sham litigation, nor from making out-of-court statements to a non-party, which statements are alleged to have been made for purposes unrelated to the litigation.

*Davern*, 2015 WL 7013459 at * **[Cite]**

9

restrictive covenants. Because the allegations by USG involve claims that is pre-litigation letters are pretextual, the litigation privilege does not apply to USG's claims against ADP.

### c. Cause of Action under New Jersey Rules of Professional Conduct

Violations of the Rules of Professional Conduct do not as such form the basis for a cause of action. *Baxt v. Liloia*, 155 N.J. 190, 202 (1998) (noting that the Rules are "framed as precatory guidelines" and a cause of action based on a violation of them is not necessary to ensure that attorneys conform their conduct to the high standards of the rules); *see also Stahl v. Twp. of Montclair*, No. 12-3244, 2013 WL 1867036 (D.N.J. May 2, 2013) (stating that *Baxt* should not be read narrowly and that the Rules do not establish a duty relevant under other law). ADP argues that USG's allegations amount to a purported violation of Rule 4.2 of the New Jersey RPC[6] and that they therefore cannot amount to a viable claim. (*See, e.g.*, Pl. Br. at 27.) In particular, ADP cites the Answer's reference to a May 24, 2017 cease-and-desist letter from ADP's in-house counsel to USG's CEO, copying several sales and marketing employees. (Answer ¶¶ 158–63.)

ADP is correct that the RPC do not give rise to a private cause of action (and if they did, presumably it would be a claim against the attorney, not the attorney's client). *Baxt*, 155 N.J. at 202. Neither, however, is conduct that is tortious immunized merely because it would also be unethical. At any rate, no

---

6     Rule 4.2 states:

    In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable members of an organization's litigation control group as defined by [Rule of Professional Conduct] 1.13, unless the lawyer has the consent of the other lawyer, or is authorized by law or court order to do so, or unless the sole purpose of the communication is to ascertain whether the person is in fact represented. Reasonable diligence shall include, but not be limited to, a specific inquiry of the person as to whether that person is represented by counsel. Nothing in this rule shall, however, preclude a lawyer from counseling or representing a member or former member of an organization's litigation control group who seeks independent legal advice. RPC 4.2

10

such RPC-based cause of action is asserted. The First Counterclaim is for tortious interference; the second is for unfair competition. Nowhere in its briefing or Answer does USG cite to the Rules of Professional Conduct or make a claim denominated as one under the RPC. The evidentiary relevance of any alleged RPC violation is a determination for another day. The motion to dismiss the counterclaims on these grounds is denied.

### d. Insufficiency of Allegations

Finally, ADP's argues that USG has failed to state plausible claims for damages, on the theory that USG has not sufficiently shown that it has been harmed or that there exists a causal link between the actions alleged and the damages sustained. (Pl. Br. at 28.) Chiefly, it takes issue with USG's allegations that it has suffered a "diminished pool" of potential employees to hire, because ADP's ex-employees have been scared off by the prospect of litigation. (*Id.*) ADP finds these claims to be "speculative" and argues that USG has failed to show concretely how this alleged "cloud of fear" has hurt its business. (*Id.* at 29.)

Under New Jersey law, a claim for tortious interference with prospective business advantage is actionable when there is "[a] luring away, by devious, improper, and unrighteous means, of the customer of another." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016) (quoting *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989)). Prospective relations have includes those leading to potentially profitable contracts or where there may be "a reasonable expectation of economic gain in as slight an interest as prospective public sales." *Id.* (citing *Printing Mart*, 116 N.J. at 754). As to loss and causation for tortious interference, there must be proof at trial that "if there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." *Id.* at 383.

At this pleading stage, however, the burden is different. For purposes of *Twombly/Iqbal*, USG has sufficiently proffered that the economic benefit it has lost were more customers and sales. Likewise, USG has sufficiently alleged that

11

there is a reasonable probability that without the interference that it would have received the anticipated economic benefit of more clients for its services.

Unfair competition, under New Jersey law, is of a more "amorphous nature" but it nevertheless "seeks to espouse some baseline level of business fairness." *Id.* at 386 (quoting *Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F. Supp. 747, 786 (D.N.J. 1995)) (noting that New Jersey courts have deliberately kept the standard of liability somewhat adaptable). Theories of damages under which plaintiff may collect include disgorgement of profits related to any conduct a jury finds tortious and lost profits from diversion of customers or sales. *Id.* at 387–88; *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 486 (D.N.J. 2009). Again, at this stage, USG need only have a short and plain statement that it is entitled to relief. *Phillips*, 515 F.3d at 231. Here, USG has sufficiently pled that ADP's conduct has caused it to lose potential customers because it cannot hire former ADP sales representatives or because those it has hired are intimidated from selling aggressively. (Answer ¶¶ 147–49.)

### IV. Conclusion

For the reasons outline above, ADP's motion to dismiss USG's counterclaims is denied.

An appropriate order follows.

Dated: March 5, 2018

Kevin McNulty
United States District Judge

12